JOHN D. ORVILLE *v.* ALCEMA M. ORVILLE.

**Divorce and Alimony.**

A judgment giving a wife alimony and the custody of a minor child will be reversed where the evidence shows the wife to have been the sole cause of the estrangement and that her constant and bitter abuse of her husband drove him from her bed and that she then abandoned him.

**Custody of Child.**

Where the proof shows from the evidence a wife's temper, and her habit of using profane language, she is not a proper person to which to intrust the care and custody of a ten-year-old daughter.

APPEAL FROM LOUISVILLE CHANCERY COURT.

September 26, 1877.

OPINION BY JUDGE ELLIOTT:

This appeal questions the correctness of a judgment of the Louisville Chancery Court granting to the appellee a divorce a mensa et

thoro from appellant, and also the custody of an infant daughter, and alimony during the separation at the rate of fifty dollars per month.

This suit was brought by the appellee who sought a divorce from the bed and board of her husband in consequence of his cruel and inhuman treatment of her, which treatment had continued for a period of more than six months, and was of a nature to indicate a settled aversion to her and to destroy permanently her peace and happiness.

In support of these charges the appellee proved that during the Louisville exposition of 1874, appellee with some friend came home late at night and found the door locked, and that he refused to give his wife money at one time during the exposition, and appeared to be cool and ill natured towards her. It is also in proof that about two years before the institution of this suit the appellant applied to a Mr. P. Fieffer to get him to ascertain through his wife from appellee upon what terms she would agree to a permanent separation from him, and said on that occasion that he could prove by his neighbors that she was such a devil that he could not live with her in any peace, and it is also in proof by their daughters that the appellant has been guilty of cruel treatment to the appellee and that they did not sleep together for some time before their separation, which occurred by appellee abandoning the appellant some time before the institution of this action.

This record furnishes no evidence of any cruel and inhuman treatment of his wife by appellant unless their sleeping apart and his desire that they should permanently separate be so considered.

On the other hand it is proved that they were married in 1854, and that shortly after their marriage they removed from Indiana to Louisville, Kentucky, where appellant was employed as the superintendent of the large porkhouse of Ormsby & Co., in whose service he has remained ever since, and although he lived in rented property, he furnished his house with every convenience and employed servants to wait on his wife and family.

He even went to the merchants and grocerymen of his acquaintance and told them to deliver his wife whatever merchandise or groceries she might call for and charge them to him, and the proof is abundant that appellee bought whatever she fancied or wished to and that they lived and she dressed rather extravagantly for people of their means and that he paid the bills without complaint of any kind.

It is in proof that during the exposition of 1874 at Louisville it

was reported to appellant that his wife was unwell, and that he thereupon went upstairs to her room to see her and asked her how she felt, whereupon she profanely cursed him and told him to leave them, that it was none of his business how she felt.

The proof also indicates that the appellee visited the exposition for a week daily with some of her acquaintances, and that she gave her friends a party at her own expense one night at a Mr. P. Fieffer's, and requested that it be concealed from her husband.

It is also in proof that shortly after her marriage appellee said that she had not married the appellant because she loved him, but because she knew he was a good provider and to get a home, and as he was a widower with some children, he had promised her to have his children raised away from home, which promise he had violated, and on one occasion she went to visit her friends in Indiana and stayed about a month, and while there said if her husband complained of her long absence she would pick up one of his children and knock the others' brains out with it, for she would not be bothered with them, and that she frequently would tie his children to a tree in the yard and sit off at a distance and scold them. On one occasion she visited Indiana when appellant's son was sick and she said before starting that she wished he would die before her return, and her wish was gratified, for he did die before her return.

She told Kate Farmer that she had only married appellant for a home and that the longer she lived with him the more she hated him, and that she would rather see the devil come to her bed than her husband, and this statement she confirmed with a profane oath.

The appellant proved in this cause by his closest neighbors that he had always been kind to the appellee and tried to live with her in peace and make her happy and that to do this he had spared neither money nor pains. He lived in a good brick house, neatly and comfortably furnished, with servants to attend to all the wants of his family, and his table was furnished not only with substantial food, but with most of the delicacies, and the wardrobe of his wife was tasteful and elegant, and added to all this he had furnished her a piano on which their daughters could discourse music to entertain her guests.

Appellant has proved by over a dozen of their close neighbors that his conduct towards his wife and family had been kind and indulgent, and that her bitterest denunciation of him to his face never extorted an abuse word in reply. These witnesses say that it has been the constant habit of appellee to curse and abuse her husband

while at their meals, and that she in these quarrels would accuse him of being unfaithful to her and of failing to provide for her and make many other accusations against him and that her language was frequently so violent and abusive as to drive appellant from the table before finishing his meal, and yet he never returned an abusive word to her but would sometimes tell her to repress her language until he left and then abuse him to his guests to her heart's content. He has proved by about thirty witnesses as high sobriety and good demeanor as any man in Louisville enjoys. On the contrary it is in evidence by almost all their neighbors that appellee is a woman of ungovernable passion, and that daily for ten or fifteen years she has abused her husband and declared she hated him, and that, pretending to be jealous of him, she gave him no peace when he was in her presence, until, goaded by this continual neglect and abuse, he declared that she was such a devil that he could not live with her longer, and through friends sought a peacable separation.

We are therefore of opinion that the appellee has been the sole cause of the estrangement between her and her husband, and that by her constant and bitter abuse of him she first drove him from her bed and then abandoned him.

The proof is that from the evidence of her temper and her habit of using profane language she is not a proper person to which to intrust the care and custody of their daughter, Minnie, who was some ten years of age.

The court below allowed the appellee fifty dollars a month for maintenance and gave her the custody of their daughter, Minnie, and granted her a divorce from the bed and board of her husband. We cannot reverse the judgment of divorce, but as the separation was occasioned by the appellee as well as the trouble between her and her husband before their separation, we do not believe her entitled to any alimony, and from the evidence in this record we do not believe she ought to have the custody of their daughter, Minnie.

In *Lee v. Lee,* 1 Duvall 197, this court said in a case like this that "no reasonable cause has been shown for her abandonment of her husband, and therefore if she chose to live separate and apart from him he should not be required to support her or contribute to her maintenance."

We are of the opinion that the unhappy differences between appellee and her husband were brought about by herself and not appellant, and that although the evidence is that appellee is a virtuous woman, her violent temper and habit of using profane language

makes it improper for her to have the custody of their daughter, Minnie, but that appellant should be restored to the custody of her.

As to the lawyer's fee, we regard it reasonable from the proof.

But for these reasons the judgment for alimony and that awarding the custody of the girl, Minnie, to appellee is *reversed* and cause remanded for further proceedings consistent with this opinion. The court should adjudge that appellee have a right to visit Minnie at stated periods, and should retain the case so that if the appellee offers to return to appellant and conduct herself properly and is refused, the court can then adjudge whether she is entitled to alimony, and if so, the amount thereof.

*R. J. Elliott, for appellant.*

*Lafe Joseph, Arthur Carey, for appellee.*